IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RICHARD B. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV411-132 |
| | ) | |
| JOHNSON TRUCK BODIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## O R D E R

Before the Court is Defendant Johnson Truck Bodies Joint Motion to Approve Consent Judgment. (Doc. 8.) For the reasons outlined below, Defendant's motion is **DISMISSED AS MOOT**. By previous order, the Court provided notice and allowed both parties an opportunity to brief the issue concerning the Court's intent to enter summary judgment sua sponte in favor of Plaintiff. (Doc. 11.) For the reasons that follow, the Court, sua sponte, **GRANTS** summary judgment in favor of Plaintiff.[1]

### BACKGROUND

Plaintiff Richard B. Clark, a Georgia resident, was hired by Defendant[2] on September 22, 2008 to oversee business

---

[1] Defendants have also filed a Motion to Strike the portions of Plaintiff's brief in support of summary judgment that constitute a reply to Defendant's brief in support of summary judgment. (Doc. 15.) Because the Court has not relied on any of those portions that may be construed as a reply, Defendant's motion to strike is **DENIED**.

[2] Defendant has cited and referenced titles with suffixes including LLC, Inc., and Co. The Court recognizes the many inconsistent references. As such, in the matter before this

dealings that occurred in the state of Georgia. (Doc. 1, Ex. A at 4-5.) Defendant is a Delaware corporation with its principal place of business in Wisconsin. (Doc. 13 at 5.) As part of his employment with Defendant, Plaintiff sold insulated truck bodies throughout Georgia, Florida, Alabama, Mississippi, Arkansas, Louisiana, Texas, and Oklahoma. (Id., Ex. A at 7.) On September 25, 2008, the parties signed and executed an "Employee Invention, Secrecy Agreement and Covenant Not to Compete for Employees of Johnson Truck Bodies, Inc." ("Employment Agreement") (Doc. 33, Ex. A at 26-29.)

Plaintiff worked from his home in Pooler, Georgia and conducted business throughout the south on behalf of Defendant. (Doc. 14 at 2.) Plaintiff's work included making contact with customers at their branch locations in Georgia, receiving quotes for approval from Defendant, obtaining and delivering orders, and handling payment. (Doc. 14 at 2-3.) Plaintiff initiated and approved all quote requests and negotiated directly with Georgia customers. (Id. at 3.)

On January 17, 2011, Plaintiff's employment with Defendant was terminated. (Doc. 12 at 6.) Upon termination of employment, Plaintiff and Defendant executed a Separation Agreement and General Release ("Separation Agreement"). (Id.) The Separation Agreement contained a severance

---

Court, Defendant will refer to any entity doing business in a capacity as Johnson Truck Bodies.

package, general release, and an integration clause superseding any prior written or oral understanding between the parties. (Doc. 14, Ex. B.) Subsequent to Plaintiff's termination, Defendant sought to enforce the Settlement Agreement. (Doc. 14, Ex. C.) Defendant alleges that Plaintiff was in violation of the Employment Agreement, namely the non-compete provision ("Non-Compete Agreement"). In relevant part, the Employment Agreement contained a restrictive covenant which provided that

> [Plaintiff] agrees that during the term of employment and for a period of eighteen (18) months following the date of termination of employment, Employee shall not be involved in any business which sells, resells, manufactures, creates or designs products which are similar to or in any way compete with the products sold by [Defendant] at the time of [Plaintiff's] departure from [Defendant's company] or which are planned to be sold, manufactured, or traded by [Defendant] at the time of [Plaintiff's] departure.

(Doc. 33, Ex. A at 27.)

As a result, Plaintiff filed a complaint in the Superior Court of Chatham County, Georgia. (Doc. 1 ¶ 1.) On May 25, 2011, Defendant removed the case to this Court on the basis of diversity jurisdiction. (Doc. 1.) Shortly thereafter, Defendant submitted the present motion to approve a consent judgment. (Doc. 8.) The motion requests that the Court enter a permanent injunction containing the terms of a new agreement, thereby replacing the present Non-Compete Agreement. (Doc. 8, Ex. A at 1-4.) The proposed

3

injunction prohibited Plaintiff from contacting or forming a relationship with a number of corporate entities. (Id.) Because the parties have asked that the terms be adopted by order of the Court, the terms of the newly proposed restrictive covenant must be analyzed to determine whether they comply with Georgia law.

On June 29, 2011, this Court provided notice, by order, of its intent to enter summary judgment sua sponte in favor of Plaintiff, directing the parties to file briefs in support or opposition to such a judgment. (Doc. 11 at 1-2.) On July 19, 2011, first Defendant (Doc. 13) and then Plaintiff (Doc. 14) filed their briefs. Defendant alleges that the court does not have personal jurisdiction over it and submits the brief only by court order to claim that issues of disputed material fact remain. (Doc. 13 at 1.) Plaintiff argues that summary judgment is proper because there are no "triable, material factual" issues for trial. (Doc. 14 at 4.)

**ANALYSIS**

I. <u>PERSONAL JURISDICTION</u>

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." <u>United Techs. Corp. v. Mazer</u>, 556

4

F.3d 1260, 1274, (11th Cir. 2009); see also Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010). When a federal court uses a state long-arm statute, "the federal court is required to construe it as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). Therefore, this Court interprets and applies Georgia's long-arm statute in the same way as would the Georgia Supreme Court. The long-arm statute provides that personal jurisdiction may be exercised under the Georgia Long Arm Statute if the nonresident "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1).

Under Georgia law, "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517-18, 631 S.E.2d 734, 737 (2006). When minimum contacts are established, courts then consider several factors to determine fairness, including "the burden on the defendant; the forum State's interest in adjudicating the dispute; the

plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 565 (1980) (citations omitted). However, the Eleventh Circuit has gone so far as to hold that:

> [f]or many years, our court has followed the interpretation that "Georgia's long arm statute confers in personam jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution." Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994). Under this rule, courts in this circuit have even gone so far as to pass over the long-arm analysis entirely and conflate it with, or collapse it into, the due process inquiry.

Diamond Crystal Brands, 593 F.3d at 1258.

Defendant contends that this Court "does not have personal jurisdiction over Defendant because it did not transact business in Georgia in a manner that gives rise to Plaintiff's cause of action." (Doc. 13 at 2.) In support of this claim, Defendant argues that, while Plaintiff engaged in many of his employment functions in Georgia, Defendant did not require Plaintiff to do so. (Id. at 5.) Defendant's argument, however, is not persuasive. Defendant purposefully directed and transacted business in Georgia by selling truck bodies to customers within Georgia. Defendant

6

had purposeful contact with Georgia through its employee, Plaintiff, for over two years. Accordingly, Defendant reasonably should have anticipated—through the actual course of dealing that occurred and any possible future consequences—defending a suit in Georgia. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985); accord Diamond Crystal Brands, 593 F.3d at 1267-68 (11th Cir. 2010). Defendant created continuing obligations with Plaintiff, as an employee, within Georgia, in addition to any business transactions that were directed or conducted. See Burger King, 471 U.S. at 472; Keener v. Convergys Corp., 342 F.3d 1264, 1268 (11th Cir. 2003). Significantly, too, Defendant is now seeking to enforce the Non-Compete Agreement against Plaintiff, who is a resident of Georgia, where the effects would be felt. See Keener, 342 F.3d at 1267-68.

Here, it is hardly through random, fortuitous, or attenuated contacts, see Burger King, 471 U.S. at 475, that Defendant is subject to the in personam jurisdiction of Georgia. Doing so does not and would not subject Defendant to traditional unfairness or create the possibility of substantial injustices. Defendant cannot vitiate such a responsibility by merely claiming that its practice did not "require" Plaintiff to provide or conduct certain activities within Georgia. Defendant was well aware that Plaintiff's

7

business on behalf of Defendant was occurring in Georgia. To suggest that Plaintiff is subject to the jurisdiction of a state other than Georgia, without more, squarely contravenes Georgia public policy and is contrary to the protections afforded a Georgia citizen under its constitution and laws. Therefore, this Court finds that Defendant has established both sufficient contacts with Georgia, to subject Defendant to suit in Georgia is fair and not violative of its due process protections.

II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(f)(3), the Court is allowed to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3); see Massey v. Cong. Life Ins. Co., 116 F.3d 1414, 1417 ("District courts unquestionably possess the power to trigger summary judgment on their own initiative." (citations omitted)). A district court may enter judgment sua sponte "if the parties are given adequate notice that they must present all of their evidence." Flood v. Young Woman's Christian Ass'n, 398 F.3d 1261, 1267 (11th Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)). Previously, the Court provided notice to both parties by order of June 29, 2011 to present all evidence

8

because it neither detects nor anticipates any genuine dispute of material fact surrounding the formation or content of the Non-Competition Agreement. (Doc. 11 at 1-2.) As such, with proper notice given, the Court will now, sua sponte, assess Plaintiff's entitlement to summary judgment.

A party is entitled to summary judgment if "the pleadings, depositions answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Flood, 398 F.3d at 1264. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when there is no sufficient showing of evidence that establishes "the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

III. APPLICABLE GEORGIA LAW

"In a diversity jurisdiction case, the court applies the substantive law of the state in which the case arose." Azar v. Nat'l City Bank, 382 F. App'x 880, 884 (11th Cir. 2010). Therefore, Georgia law applies because Plaintiff is a resident of Georgia and Defendant is attempting to enforce a restrict covenant within the state of Georgia. Georgia case law has held that where there are "justified expectations" of the parties and overriding Georgia public policy concerns, Georgia law applies. Keener, 342 F.3d at 1266.

As a matter of law, the Non-Compete Agreement stands or falls in its entirety. A trial court makes determinations on legality and enforceability as a matter of law and not on

10

an adjudication of contested facts. <u>Uni-Worth Enters. v. Wilson</u>, 244 Ga. 636, 640, 261 S.E.2d 572, 575 (1979) " 'Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court." <u>Id.</u>, 261 S.E.2d at 575 (quoting <u>Rakestraw v. Lanier</u>, 104 Ga. 188, 194, 30 S.E. 735, 738 (1898)).

Historically, Georgia courts applied strict scrutiny to restrictive covenants in employment contracts. <u>See, e.g.</u>, <u>Id</u> at 1268; <u>New Atlanta, Ear, Nose & Throat Assocs., P.C. v. Pratt</u>, 253 Ga. App. 681, 684, 560 S.E.2d 268, 270-71 (2002). Until recently, too, Georgia courts prohibited the "blue-pencil" doctrine of severability, which allowed a court to edit or revise an otherwise unenforceable agreement in order to bring its terms within the legal requirements. <u>See</u> <u>Boone v. Corestaff Support Servs.</u>, 805 F. Supp. 2d 1362, 1369 (N.D. Ga. 2011); <u>Morgan Stanley DW, Inc. v. Frisby</u>, 163 F. Supp. 2d 1371, 1377-79 (N.D. Ga. 2001) (applying Georgia law and refusing to "blue pencil" a restrictive covenant). " 'Georgia law is clear' that if one covenant in an agreement subject to strict scrutiny is unenforceable, 'then they all are unenforceable.' " <u>Cox v. Altus Healthcare & Hospice, Inc.</u>, 308 Ga. App. 28, 32, 706 S.E.2d 660, 665 (2011) (quoting <u>Advance Tech. Consultants v. RoadTrac</u>, 250 Ga. App. 317, 320, 551 S.E.2d 735, 737 (2001)); <u>see also</u> <u>Uni-Worth</u>, 244 Ga. at 640, 261 S.E.2d at 575 ("[I]f any of

11

the sub-paragraphs of the restrictive covenant are invalid, the entire covenant must fall.").

The former law prohibited "contracts or agreements in general restraint of trade." Howard Schultz & Assocs. of the Se., Inc. v. Broniec, 239 Ga. 181, 183, 236 S.E.2d 265, 267 (1977). However, "covenants against competition in employment contracts are considered in partial restraint of trade, and they are enforceable if strictly limited in time and territorial effect, and if they are otherwise reasonable considering the business interests of the employer sought to be protected and the effect on the employee." Uni-Worth, 244 Ga. at 638-39, 261 S.E.2d at 575 (citations omitted).

In November 2010, Georgia adopted a state constitutional amendment that authorizes covenants that restrain later employment in a reasonable manner. O.G.C.A. § 13-8-53. Georgia law now allows that a "court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." O.C.G.A. § 13-8-53(d). Significantly, the Georgia statute grants courts discretionary, not mandatory, authority to modify the restraint provisions. O.C.G.A. § 13-8-54(b).

However, where cases arise seeking to enforce an employment agreement that was entered into before the effective date of the new Georgia law, courts "apply the law of restrictive covenants as it existed before the November

2010 ratification of [the new Georgia restrictive covenant law]." Boone, 805 F. Supp 2d at 1369 (citations omitted); see also Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc., 309 Ga. App. 503, 505 n.1, 710 S.E.2d 662, 665 n.1 (2011); see also Gordon Document Prods., Inc. v. Serv. Techs., Inc., 308 Ga. App. 445, 448 n.1, 708 S.E.2d 48, 52 n.1 (2011) (citations omitted); Cox, 308 Ga. App at 30, 706 S.E.2d at 663-64 (finding that restrictive covenants entered into before ratification apply the law of restrictive covenants as it existed before ratification). The new version of the statute "shall not apply in actions determining the enforceability of restrictive covenants entered into before [its] ratification." 2009 Ga. Laws p. 231, § 4.

In Bunker Hill, an employee and new employer brought an action seeking a declaration that the restrictive covenants the employee entered into with his previous employer, before the effective date of the ratification were unenforceable under Georgia law. 309 Ga. App. at 503-04, 710 S.E.2d at 664. The court's decision rested upon Georgia's public policy and law at the time of the agreement and held the non-compete and non-solicitation provisions unenforceable. Id. at 507-08, 710 S.E.2d at 666. The court held that a non-compete covenant without any territorial limitation is unenforceable under Georgia law because "it provides inadequate notice of its extent to the ex-employee." Id. at 507, 710 S.E.2d at 666. Finally, the court held that

"Georgia courts do not 'blue-pencil' employment agreements in order to salvage some provisions when other provisions have been found void." Id., 710 S.E.2d at 667.

In the present case, the Employment Agreement containing the Non-Compete Agreement was entered into in September of 2008, well before the new act's ratification. Thus, the pre-amendment Georgia law and public policy governing non-compete agreements applies. The 2008 Non-Compete Agreement contains no limit on territorial restrictions. Simply, the Non-Compete Agreement seeks to restrict Plaintiff for eighteen months from involvement in "any business" which in "any way compete[s] with [Defendant]." (Doc. 33, Ex. A at 27.) Such language is also overly unreasonable on the effects it has on Plaintiff. See Uni-Worth, 244 Ga. at 638-39, 261 S.E.2d at 575. Because these provisions are invalid under Georgia's pre-ratification law, and is not capable of being "blue-penciled" by the Court, the entire covenant must fail. As such, this Court—after providing notice of its intent to do so, and an opportunity for both parties to present all of their evidence—hereby enters summary judgment sua sponte in favor of Plaintiff.

With regards to the joint motion to approve consent judgment (Doc. 8), the motion is **DISMISSED AS MOOT**. While the consent judgment agreement would be subject to the newly amended blue-pencil law, because it would be entered into after ratification, the non-compete covenant includes a time

restriction until January 17, 2012. January 17, 2012, has since passed and the Court finds no need to "blue-pencil" any further time restriction. See O.C.G.A. § 13-8-54(b) ("[T]he court may modify the restraint provision and grant only the relief reasonably necessary to protect such interest or interests and to achieve the original intent of the contracting parties to the extent possible.")

## CONCLUSION

For the foregoing reasons, the joint motion to approve consent judgment is **DISMISSED AS MOOT** and the Court, sua sponte, enters summary judgment in favor of Plaintiff. The Clerk of Court is **DIRECTED** to close this case and to enter judgment in favor of Plaintiff.

SO ORDERED this 23RD day of March 2012.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

15